**IN THE**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS-BOSTON DIVISION**

Anthony Snow                                :
           petitioner,
                        :

                        :

v.                                          :    Case No.: **03-CR-10403-011** (PBS)

                        :

                        :

United States of America
           respondent.

05 - 11582 PBS

**MOTION FOR CORRECTION OF SENTENCE**
**PURSUANT TO 18 USC §3742, RULE 52(b) F.R.Crim.P.**
**AND/OR ANY OTHER PERTINENT/APPLICABLE STATUTES/RULES**

**COMES NOW** petitioner Anthony Snow, (hereinafter referred to
as petitioner), filing pro se and without counsel, and moves this
Honorable Court pursuant to 18 U.S.C. §3742, Rule 52(b) of the
Federal Rules of Criminal Procedure and/or any other pertinent or
applicable Statutes and/or Rules for a correction of a sentence
handed down by the Honorable Patti B. Saris, United States District
Judge, sitting in the District of Massachusetts-Boston Division
on April 27, 2005 in the above captioned case, due to misapplication
of the United States Sentencing Guidelines and for plain error.

    Petitioner further asks this court to construe this and any
future motions, pleadings, answers, briefs and/or filings made
by the petitioner pro se, liberally, as he is filing pro se, is
not an attorney nor does he have a legal educational background.

See: **Haines v. Kerner**, 404 U.S. 519 (1972).

## JURISDICTION

This court was petitioner's sentencing court and as such has ancillary jurisdiction and thus, jurisdiction is not an issue in this matter at this time.

## PROCEDURAL BACKGROUND

On April 27, 2005, petitioner was sentenced by this Court to a term of imprisonment of 63 months for willful violation of Laws and/or Statutes of the United States of America, to wit: Mail and Wire Fraud, by the Honorable Patti B. Saris, United States District Judge, sitting in the United States District Court, District of Massachusetts-Boston Division. Petitioner did not file a direct appeal in this matter nor does he have any other motions/actions pending in this or any other court in affiliation with this matter.

## ARGUMENT

Petitioner asserts that the sentence handed down in this instant matter was incorrect and in violation of the United States Sentencing Guidelines (hereinafter referred to as U.S.S.G.), and as such, plain error has occurred and this court is bound by its own rules, laws, regulations, decisions and statutes to correct said error under 18 U.S.C. §3742, Rule 52(b) of the Federal Rules of Criminal Procedure and/or any other pertinent Rules/Regulations or Statutes.

In furtherance thereof, petitioner states the following:

-2-

At petitioner's sentencing, the Honorable Patti B. Saris,
U.S.D.J., (hereinafter referred to as Judge Saris), made reference
to the U.S.S.G. that has given rise to petitioner's instant action.
To wit:  That she (Judge Saris) knew and understood that the U.S.S.G.
were only advisory pursuant to the recent **Booker** decision handed
down by the United States Supreme Court (**United States v.
Booker/Fanfan**, 543 U.S. \_\_\_\_, 160 L.Ed.2d 621, 125 S.Ct. \_\_\_\_(2005)).
Yet, right before passing down petitioner's actual sentence, Judge
Saris stated that she was sentencing petitioner at the bottom of
the range where he (petitioner) fell in the U.S.S.G.. (The government
had stipulated in petitioner's plea agreement that they would ask
for/not argue against a sentence at the low end of the U.S.S.G.
range in petitioner's case).  This is plain error under Rule 52(b)
for a number of reasons:

> 1)  The U.S.S.G. are/were advisory **only**, at the
>     time petitioner was sentenced.  Any reference
>     to petitioner being sentenced at the low end
>     of the U.S.S.G. was/is plain error as in
>     effect, petitioner was sentenced to the high
>     end of the correct U.S.S.G. range if proper
>     calculation of the U.S.S.G. would have been
>     applied in the petitioner's case as the below
>     listed reason and the body of the instant
>     action will attest to.

> 2)  Petitioner has a right to be sentenced at the
>     proper U.S.S.G. range or to at least have the
>     court be in possession of the proper U.S.S.G.
>     range if using the U.S.S.G. range in only an
>     advisory manner.  By not sentencing petitioner
>     at the proper advisory U.S.S.G. range (and
>     Judge Saris stating she **was** sentencing the
>     petitioner at the low end of any applicable
>     range if mandatory/applicable), petitioner's

> sentence was handed down through a misapplication
> of the U.S.S.G. and is also plain error as Judge
> Saris did not have the correct U.S.S.G. range
> applicable (if not advisory) in petitioner's
> matter, either before her for contemplation or
> miscalculated the range applicable by not taking
> into consideration the two (2) point reduction
> for acceptance of responsibility that petitioner
> was eligible for and for which Judge Saris said
> she was applying in the petitioner's case but
> in giving the petitioner a level 20 score instead
> of a level 18 (63 months is low end of level 20),
> plain error occurred and prejudiced petitioner
> and harmed him by having him sentenced to a term
> of imprisonment that is one (1) year longer than
> what the low end of level 18 would be (51 months).
> (petitioner has a Criminal History Catagory of 5).

Petitioner will show that through miscalculation, petitioner's

U.S.S.G. range would be (after a 2 point reduction for acceptance

of responsibility that Judge Saris said she was applying in the

petitioner's case), a level 18 and not a level 20 where petitioner

was sentenced at. Therefore, when petitioner was sentenced at the

low end of a level 20 guideline range to 63 months incarceration

(level 20 with a Criminal History Catagory of 5 carries between

63 and 78 months incarceration) instead of the low end of level

18 (level 18 with a Criminal History Catagory of 5 carries between

51 and 63 months incarceration), plain error occurred and petitioner

was **not** sentenced to the low end of the proper U.S.S.G. range in

the instant matter as petitioner's correct sentence if Judge Saris

would have used the correct U.S.S.G. range would have been 51 months

incarceration. See: **EXHIBIT 1A** (U.S.S.G. §2B1.1); **EXHIBIT 1B**

(Breakdown Of U.S.S.G. §2B1.1 As Applied/Applicable To Petitioner);

**EXHIBIT 1C** (U.S.S.G. Calculation Both Incorrect & Correct as

Applied/Applicable To Petitioner); **EXHIBIT 1D** (Sentencing Table).

-4-

Petitioner asserts that 18 U.S.C. § 3742 is the proper avenue under which to file a correction of sentence due to misapplication of the U.S.S.G. in the instant matter.

18 U.S.C. § 3742 states in pertinent part:

### 18 USC §3742   Review of a sentence

(a)l. **Appeal by a defendant.**---a defendant may file a notice of appeal in the district court for a review of an otherwise final sentence if the sentence---

(2)   was imposed as a result of an incorrect application of the sentencing guidelines.

(f)   **Decision and disposition.**---if the court of appeals determines that---

(1)   the sentence was imposed in violation of the law or as a result of incorrect application of the sentencing guidelines the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate.

Under 18 U.S.C. §3742 where misapplication is shown, then plain error has occurred, as explained in **Williams v. United States**, 503 U.S. 193, 117 L.Ed.2d 341, 112 S.Ct. 1112 (1992) (in pertinent part):

> "Section 3742(f)(1) does not call for a remand every time a sentencing court might misapply a provision of the Guidelines: rather, remand is required only if the sentence was 'imposed as a result of an incorrect application' of the Guidelines... When a district court has not intended to depart from a guideline, a sentence is imposed 'as a result of' an incorrect application of the Guidelines when the error results in the district court selecting a sentence from the wrong guideline range.  When a district court has intended to depart from the guideline range, a sentence is imposed 'as a result of' a misapplication of the guidelines if the sentence would have been different but for the district courts error...

> We conclude that the party challenging the sentence
> on appeal, although it bears the initial burden of showing
> that the district court relied upon an invalid factor at
> sentencing, does not have the additional burden of proving
> that the invalid factor was determinative in the sentencing
> decision. Rather, once the court of appeals has decided
> that the district court misapplied the Guidelines, a remand
> is appropriate unless the reviewing court concludes, on
> the record as a whole, that the error was harmless, i.e.,
> that the error did not affect the district court's
> selection of the sentence imposed.

> If the party defending the sentence persuades the
> court of appeals that the district court would have imposed
> the same sentence absent the erroneous factor, then a
> remand is not required.

**Id.** at 202-03, 112 S.Ct. 1112 (citations omitted).

Further, under Rule 52(b) of the Federal Rules of Criminal
Procedure, petitioner states that plain error occurred, that it was
prejudicial and harmful to petitioner and that correction is the
only remedy available under 18 USC §3742 and/or Rule 52(b).
Rule 52(b) states in pertinent part:

**Rule 52. Harmless and Plain Error**

    **(b) Plain Error.** A plain error that affects
    substantial rights may be considered even
    though it was not brought to the court's
    attention.

Petitioner argues that there is error and that it is prejudicial
and harmful to petitioner as it effectively gave petitioner a one
year longer sentence of incarceration to serve. The petitioner,
through research has found a Sixth Circuit case that gives a concise
and exact breakdown of the plain error doctrine as viewed through
**United States v. Olano**, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d
508 (1993) which seems to have/take precedence in lower court plain

-6-

error review determinations. In **United States v. Barnett**, 398 F.3d

516 (6th Cir. 2005) the Sixth Circuit Court of Appeals held:

> "In reviewing for plain error, we must consider whether
> there was plain error that affects the substantial rights
> and that, in our discretionary view, seriously affects the
> fundamental fairness, integrity, or public reputation of
> the judicial proceedings. **Johnson v. United States**,
> 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)
> (citing **United States v. Olano**, 507 U.S. 725, 732,
> 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).
>
> **[10]** We first consider whether there was error under
> current law. **United States v. Rogers**, 118 F.3d 466,
> 471-72 (6th Cir. 1997). In the instant case, Barnett
> was sentenced under the pre-**Booker** mandatory Sentencing
> Guidelines. The district court sentenced Barnett to
> 265 months of imprisonment followed by four years of
> supervised release, which fell within the Guidelines range
> of 235-292 months as required by 18 USC §3553(b)(1).
> This sentencing procedure was correct at the time, but
> now, because section 3553(b)(1) has been excised and
> severed under **Booker**, the district court erred by treating
> the Guidelines as mandatory when it sentenced Barnett.
> Thus, the first requirement for finding plain error is
> satisfied in the present case.
>
> **[11]** The next issue is whether the error was "plain".
> In this context, "'[p]lain' is synonymous with 'clear'
> or equivalently, 'obvious.'" **Olano**, 507 U.S. at 733-34,
> 113 S.Ct. 1770. The Supreme Court has expressly held
> that 'where the law at the time of trial was settled
> and clearly contrary to the law at the time of appeal...
> it is enough that an error be plain at the time of
> appellate consideration.' **Johnson**, 520 U.S. at 468,
> 117 S.Ct. 1544; accord **United States v. Callway**,
> 116 F.3d 1129, 1136 (6th Cir. 1997).
>
> **[12-14]** Third, the defendant is required to demonstrate
> that the plain error 'affect[ed] substantial rights.'
> **Fed.R.Crim.P. 52(b)**; **Olano**, 507 U.S. at 734, 113 S.Ct.
> 1770. As the Supreme Court reiterated in **United States v.**
> **Cotton**, 535 U.S. 625, 632, 122 S.Ct. 1781, 152 L.Ed.2d
> 860 (2002) (quoting **Olano**, 507 U.S. at 734, 113 S.Ct. 1770)
> (emphasis added), the phrase 'affect substantial rights'
> is generally synonymous with 'prejudicial' which '**usually**
> means the error must have affected the outcome of the
> district court proceedings.' However, the Supreme Court
> has noted, and this Circuit has recognized two exceptions

-7-

to the requirement that the defendant demonstrate that
the error "affect the outcome of the district court
proceedings." First, there is a class of so-called
"structural" errors, which, the Supreme Court has
instructed, "can be corrected regardless of their effect
on the outcome." **Olano**, 507 U.S. at 735, 113 S.Ct. 1770.
"A 'structural' error is a 'defect affecting the framework
within which the trial proceeds, rather than simply an
error in the trial process itself.'" **Johnson**, 520 U.S.
at 468, 117 S.Ct. 1544 (quoting **Arizona v. Fulminante**,
499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).
The Supreme Court has found "structural errors only in
a very limited class of cases." **id.**, such as where a
defendant is denied certain fundamental rights, including
the right to a public trial, **Waller v. Georgia**, 467 U.S.
39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the right to
self-representation at trial, **McKaskle v. Wiggens**,
465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), and
the right to counsel, **Gideon v. Wainwright**, 372 U.S. 335,
83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In such cases,
because the error was "structural," the defendant was not
required to demonstrate that he was prejudiced, or, in
other words, that the error affected the outcome of the
district court's proceedings.

[15] Second, the Supreme Court's decision in **Olano**, "made
it quite clear that in some situations a presumption of
prejudice is appropriate" if the defendant cannot make a
specific showing of prejudice. **Manning v. Huffman**,
269 F.3d 720, 726 (6th Cir. 2001) (holding that a
presumption of prejudice is appropriate in a habeas case
where an alternate juror participated in jury deliberations,
even absent evidence that the error affected the jury's
deliberations and its verdict): **United States v. Segines**,
17 F.3d 847, 852 (6th Cir. 1994) (noting that "[t]he
Supreme Court has stopped short... of establishing a
blanket rule that shifts the burden of persuasion on the
defendant in all cases... [There also may be] 'errors
that should be presumed prejudicial if the defendant
cannot make a specific showing of prejudice.'") (quoting
**Olano**, 507 U.S. at 735, 113 S.Ct. 1770).

Courts have presumed prejudice, and have thus found the
third prong of plain error review satisfied, in cases
where the inherent nature of the error made it exceptionally
difficult for the defendant to demonstrate that the
outcome of the lower court proceeding would have been
different had the error not occurred. For instance, in
**United States v. Adams**, 252 F.3d 276, 287 (3rd Cir. 2001),
the Third Circuit found plain error where the defendant

-8-

was not given the opportunity to exercise his rights of allocution. In considering whether the defendant could show that the court's error was prejudicial, the court expressly noted the difficulty in establishing that the allocution error affected the outcome of the district court proceedings. **See id.** ("in order to prove that the error actually 'affected the outcome of the district court proceedings,' [the defendant] would have to point to statements that he would have made at sentencing, and somehow show that these statements would have changed the sentence imposed by the District Court."). Because of "the nature of the right and the difficulty of proving prejudice from its violation," **id.** at 287, the court concluded that it would presume prejudice rather than require the defendant to make the "enormously difficult" showing that the error affected the district court's sentencing decision. **id.** (quoting **United States v. Alba-Pagan**, 33 F.3d 125, 130 (1st Cir. 1994)) (internal quotation marks omitted).

In addition to the allocution context, courts have been willing to presume prejudice, both implicitly and explicitly, in plain error review of other types of errors that, by their nature, keep the party from being able to demonstrate that, in the absence of that error, the outcome of his trial or sentence would have been different. For example, in **United States v. Plaza-Garcia**, 914 F.2d 345, 347-48 (1st Cir. 1990), then Chief Judge Stephen Breyer vacated a sentence that fell within both erroneously applied and correct Guideline ranges under the plain error doctrine because the sentence "may well have been influenced by the [erroneous] sentencing recommendation."

Though petitioner was not sentence under pre-**Booker**, supra, regime, the first prong of the plain error doctrine would be satisfied by petitioner's assertion that Judge Saris stating that she was sentencing petitioner to the **low end** of the Guidelines, but yet, if the correct Guidelines range would have been applied, 51 months is the **low end** of the correct Guideline range after a 2 point reduction for acceptance of responsibility and 63 months is the **high end**. Thus, plain error occurred (and the first prong of the **Olano** doctrine is satisfied) as petitioner is effectively sentenced

-9-

at the high end of the correct Guidelines range.

There is not a question of guilt or innocence in this matter, the petitioner is guilty. The issue is the meaning of plain error in the context of an illegal sentence. Petitioner's argument rests on the difference between the guilt phase of a case and the punishment phase. Guilt is either-or;  the petitioner is either guilty or innocent. If an error is committed and the defendant is convicted, the appellate court has only to consider whether the petitioner would have probably have been acquitted had the error not occurred. If so, if the error may well have precipitated a miscarriage of justice (which the conviction of an innocent person is), it is a plain error and the petitioner is entitled to a new trial.  But sentencing is not either-or; it is a choice of a point within a range established by Congress, prior to **Booker**, supra, the range was normally a broad one. There were exceptions, notably where the choice was between death and prison; then, as in **Jones v. United States**, 527 U.S. 373, 402-05, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), it may be feasible for the appellate court to determine that despite the error the choice would have been the same. Cf. **United States v. Cotton**, 535 U.S. 625, 633-34, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). This is not true here; unless Judge Saris in the instant case had said at sentencing that she was giving the petitioner the same sentence whether the guidelines were advisory or not or that it would not matter where in the guidelines (if applicable) petitioner would fall she would hand down the same sentence of 63 months, but yet she sentenced petitioner to a term that fell within a guideline

-10-

that the government said they would recommend that petitioner be sentenced at the low end of and obviously Judge Saris thought that a level 20 after any reductions was correct but in retrospect, and as shown by petitioner, 18 is the correct level and petitioner was not sentenced to the low end of any applicable or advisory U.S.S.G. range even though Judge Saris stated she was sentencing petitioner to the low end of the U.S.S.G., it is impossible for a reviewing court to determine if said sentence is the final say-so under the pre or post **Booker** regime in the petitioner's case without consulting the sentencing judge as to whether the same sentence would have been handed down.

In **United States v. Paladino**, 401 F.3d 471 (7th Cir. 2005), the Seventh Circuit Court of Appeals stated in pertinent part:

> "a conscientious judge--one who took the guidelines seriously whatever his private views--would pick a sentence relative to the guideline range. If he thought the defendant a more serious offender than an offender at the bottom of the range, he would give him a higher sentence even if he thought the entire range too high.
>
> Even in cases in which there is a broad sentencing range, it may sometimes be possible for an appellate court to be confident that the sentencing judge would have given the sentence he did even if the had not misunderstood the legal effect of the guidelines."

It is a miscarriage of justice to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person. As the court said in **United States v. Pawlinski**, 374 F.3d 536, 540-41 (7th Cir. 2004), "the entry of an illegal sentence is a serious error routinely corrected on plain-error review." **Id.** 374 F.3d at 541, "to tell a defendant we know your sentence would

-11-

have been 60 months shorter had the district judge known the
guidelines were merely advisory, because he's told us it would have
been--but that is your tough luck and you'll just have to stew in
prison for 60 additional months because of an acknowledged violation
of the Constitution--would undermine the fairness, the integrity
and the public repute of the federal judicial process." **Pawlinski**,
supra, (internal quotations and case cites omitted).

In a dissenting opinion in **Paladino**, supra, Ripple, Circuit
Judge stated:

> "However, we have never required this specific showing
> of prejudice in circumstances in which the error denied
> the defendant a constitutionally-mandated process and
> when the outcome of that process cannot be known until
> the process actually takes place. Rather, in such contexts,
> we have ordered resentencing when a distinct possibility
> exists that the error influenced the district court's
> selection of a particular sentence. For instance, we have
> remanded sentences that fell in the overlap of an erroneously
> applied sentencing range and the correct guidelines range,
> 'unless we have reason to believe that the error did not
> effect the district court's selection of a particular
> sentence.' **Emezuo v. United States**, 357 F.3d 703, 711
> (7th Cir. 2004) (quoting **United States v. Wallace**,
> 32 F.3d 1171 (7th Cir. 1994).

See also: **United States v. Sofsky**, 287 F.3d 122, 125 (2nd Cir. 2002)
(relaxing the otherwise rigorous plain error review standards to
correct unobjected error because the error related to the sentencing
and the defendant lacked prior knowledge that the erroneous sentencing
condition would be imposed.); **United States v. Plaza-Garcia**,
914 F.2d 345, 347-48 (1st Cir. 1990) (vacating sentence under the
plain error doctrine that fell within incorrect and correct guidelines
range because the sentence "may well have been influenced by the
[erroneous] sentencing recommendation.").

In a case parallel to petitioner's and if the government

would argue in opposition that petitioner's substantial rights were

not violated or that it is in petitioner's case, harmless error,

petitioner cites: **United States v. Weaver**, 161 F.3d 528 (8th Cir.

1998) where the Eighth Circuit Court of Appeals held that the

presentence report's (PSR's) recommendation of a base offense level

of 26 instead of 22 due to a typographical mistake was plain error

affecting the defendant's substantial rights as to require

resentencing.    To wit:   the Court said, in pertinent part:

> "The parties agree that an error occurred in this case
> and that it was plain.  the Government argues, however,
> that the error did not affect Weaver's substantial rights
> because the 120-month sentence he received fell within
> the Guidelines range of 110-137 months which would have
> applied absent the error in the PSR.  The government draws
> our attention to decisions that have found no plain error
> where the defendant's sentence fell within what would
> have been the correct guidelines range absent the error.
> See: e.g., **United States v. Arigbodi**, 924 F.2d 462
> (2nd Cir. 1991).  Nevertheless, we believe the present case
> is distinguishable given the district court's statements
> at Weaver's sentencing hearing, the court's reasons stated
> in the written judgment for imposing the 120-month sentence,
> and the nature of the error.
>
> Specifically, the court stated at the hearing that it
> was <u>sentencing Weaver at the bottom of the sentencing
> range</u> with 'some reservation' because of the court's
> concern over Weaver's criminal history, but that the
> court had been influenced by Weaver's cooperation for
> which the government had not filed a departure motion,
> and that the court also had considered Weaver's health.
> The written judgment reiterated that the court had
> sentenced Weaver as it did because of his health and
> lack of substantial-assistance motion, and added another
> sentencing consideration:  Weaver's relatively young age.
> All of the reasons stated by the district court for imposing
> Weaver's sentence at the bottom of the sentencing range
> are present whether Weaver's sentencing range is 120-150
> months or 110-137 months.
>
> Accordingly, we are unwilling to say that Weaver's
> substantial rights were not effected by the error, because

-13-

> our review of the record as a whole persuades us that
> the court might well have sentenced Weaver to a lesser
> term of imprisonment under the range that would have
> applied but for the typographical error.  See:
> **United States v. Wallace**, 32 F.3d 1171, 1174-75 (7th Cir.
> 1994) (defendant was sentenced at the bottom of incorrect
> sentencing range to 168 months; absent error, correct
> range was 151-188 months and plain error existed because
> district court chose lowest possible sentence in
> erroneous range and appellate court had 'no reason to
> believe that [district court] would not have selected
> an even lower sentence' in correct sentencing range if
> given the opportunity to do so).
>
> Thus, we believe that this is an appropriate case in
> which to exercise our discretion to reverse, for we
> believe the public's confidence in the judicial process
> would be undermined if an inadvertent typographical error
> were to be allowed to influence the length of a criminal
> defendant's sentence.
>
> The sentence is vacated, and the case remanded to the
> district court for sentencing under the correct Guidelines
> range of 110-137 months."

id. (emphasis added)

See also: **United States v. Warren**, 361 F.3d 1055 (8th Cir. 2004)

(Court of Appeals remanding for essentially the same reasons as

**Weaver**).

Petitioner, on a final note, cites **United States v. Thayer**,

201 F.3d 214 (3rd Cir. 1999) where the Third Circuit Court of Appeals

cited **United States v. Tello**, 9 F.3d 1119 (5th Cir. 1993) using the

**Williams** doctrine (**Williams v. United States**, 503 U.S. 193, 112 S.Ct.

1112, 117 L.Ed.2d 341 (1992)) it was held that:

> "the District Court had erred in failing to reduce the
> defendant's offense level by one point under §3E1.1(b)
> for acceptance of responsibility, causing the court
> to apply the wrong sentencing range to the defendant.
> The government argued the sentencing error had been
> harmless because the sentence the District Court imposed
> was within both the sentencing range the District Court
> actually used and the range it should have used.  The
> Court of Appeals held the government had the burden of

-14-

of establishing harmless error under **Williams**:

> The [**Williams**] Court pronounced that the
> finding of an incorrect application of the
> Guidelines shifts the burden to the proponent
> of the sentence--whether that be the defendant
> or the government--to "persuade[] the court
> of appeals that the district court would have
> imposed the same sentence absent the erroneous
> factor." ...[W]e apply the Court's **Williams**
> standard in determining generally whether a
> misapplication of the Guidelines automatically
> requires remand for resentencing.

**Id.** at 1129 (second alteration in original).

Because the government had not met its burden, the court remanded
for re-sentencing. See: **id.** at 1131.

Nor can the government prove (let alone claim) harmless error
in the instant matter and therefore petitioner states and avers
that there was error in his case, it was prejudicial and if not
corrected would bring the integrity, fainess and public reputation
of the judiciary into question and thus, correction is mandated
in this instant case. See also some recent decisions in sister
circuits pertaining to plain error: **United States v. Crosby**,
397 F.3d 103 (2nd Cir. 2005); **United States v. Coles**, 403 F.3d 764
(D.C. Cir. 2005); **United States v. Davis**, 77 CrL 125 (3rd Cir. 2005)
(en banc).

Petitioner prays the District Court finds error and wishes to
correct it and avoid drawn out litigation in a higher court venue
by adjudging that there was error in petitioner's case, that remand
is the only fair and just solution as plain error was shown by the
petitioner and that it was prejudicial and harmful to the petitioner
and thereby in its inherent powers and to prevent a miscarriage of
justice, **ORDER** that petitioner's sentence was handed down in a

-15-

misapplication of the sentencing guidelines that plain error occurred and that the error was harmful and that remand for resentencing is the appropriate remedy to prevent questioning of the the judiciary's integrity, fairness and public reputation in a manner that would blacken or discredit aforementioned integrity and fairness, therefore and thereby sentencing petitioner to a term of 51 months under post **Booker**, supra, regime and have it ordered as a nunc pro tunc sentence and thereby effectively correcting said error.

Nothing more petitioner sayeth.

Dated, this the 8TH day of July, 2005.

Respectfully Submitted,

Anthony Snow (pro se)
Reg. No. 24639-038
F.M.C. Devens
P.O. Box 879
Ayer, MA  01432

-16-

EXHIBIT

1 A

Public Safety.) These guidelines apply to offenses prosecuted under a wide variety of federal statutes, as well as offenses that arise under the Assimilative Crimes Act.".

and inserting the following:

"PART B—BASIC ECONOMIC OFFENSES

"1. THEFT, EMBEZZLEMENT, RECEIPT OF STOLEN PROPERTY, PROPERTY DESTRUCTION, AND OFFENSES INVOLVING FRAUD OR DECEIT

*"INTRODUCTORY COMMENTARY*

"These sections address basic forms of property offenses: theft, embezzlement, fraud, forgery, counterfeiting (other than offenses involving altered or counterfeit bearer obligations of the United States), insider trading, transactions in stolen goods, and simple property damage or destruction. (Arson is dealt with separately in Chapter Two, Part K (Offenses Involving Public Safety)). These guidelines apply to offenses prosecuted under a wide variety of federal statutes, as well as offenses that arise under the Assimilative Crimes Act.".

*Reason for Amendment* For Reason for Amendment, see Historical Notes under § 2B1.1 relating to 2001 Amendments. **The effective date of this amendment is November 1, 2001.**

§ 2B1.1. **Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States**

(a) Base Offense Level:

(1) 7, if (A) the defendant was convicted of an offense referenced to this guideline; and (B) that offense of conviction has a statutory maximum term of imprisonment of 20 years or more; or

(2) 6, otherwise.

(b) Specific Offense Characteristics

(1) If the loss exceeded $5,000, increase the offense level as follows:

| | Loss (apply the greatest) | Increase in level |
|---|---|---|
| (A) | $5,000 or less | no increase |
| (B) | More than $5,000 | add 2 |
| (C) | More than $10,000 | add 4 |
| (D) | More than $30,000 | add 6 |
| (E) | More than $70,000 | add 8 |
| (F) | More than $120,000 | add 10 |
| (G) | More than $200,000 | add 12 |

248

| | Loss (apply the greatest) | Increase in level |
|---|---|---|
| (H) | More than $400,000 | add 14 |
| (I) | More than $1,000,000 | add 16 |
| (J) | More than $2,500,000 | add 18 |
| (K) | More than $7,000,000 | add 20 |
| (L) | More than $20,000,000 | add 22 |
| (M) | More than $50,000,000 | add 24 |
| (N) | More than $100,000,000 | add 26 |
| (O) | More than $200,000,000 | add 28 |
| (P) | More than $400,000,000 | add 30. |

(2) (Apply the greatest) If the offense—

(A)(i) involved 10 or more victims; or (ii) was committed through mass-marketing, increase by 2 levels;

(B) involved 50 or more victims, increase by 4 levels; or

(C) involved 250 or more victims, increase by 6 levels.

(3) If the offense involved a theft from the person of another, increase by 2 levels.

(4) If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 2 levels.

(5) If the offense involved misappropriation of a trade secret and the defendant knew or intended that the offense would benefit a foreign government, foreign instrumentality, or foreign agent, increase by 2 levels.

(6) If the offense involved theft of, damage to, or destruction of, property from a national cemetery, increase by 2 levels.

(7) If (A) the defendant was convicted of an offense under 18 U.S.C. § 1037; and (B) the offense involved obtaining electronic mail addresses through improper means, increase by 2 levels.

(8) If the offense involved (A) a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency; (B) a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding; (C) a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines; or (D) a misrepresentation to a consumer in connection with obtaining, providing, or furnishing financial assistance for an institution of higher education, increase by 2 levels. If the resulting offense level is less than level 10, increase to level 10.

(9) If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

(10) If the offense involved (A) the possession or use of any (i) device-making equipment, or (ii) authentication feature; (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

(11) If the offense involved an organized scheme to steal vehicles or vehicle parts, and the offense level is less than level 14, increase to level 14.

(12) If the offense involved (A) the conscious or reckless risk of death or serious bodily injury; or (B) possession of a dangerous weapon (including a firearm) in connection with the offense, increase by 2 levels. If the resulting offense level is less than level 14, increase to level 14.

(13) (Apply the greater) If—

(A) the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, increase by 2 levels; or

(B) the offense (i) substantially jeopardized the safety and soundness of a financial institution; (ii) substantially endangered the solvency or financial security of an organization that, at any time during the offense, (I) was a publicly traded company; or (II) had 1,000 or more employees; or (iii) substantially endangered the solvency or financial security of 100 or more victims, increase by 4 levels.

(C) The cumulative adjustments from application of both subsections (b)(2) and (b)(12)(B) shall not exceed 8 levels, except as provided in subdivision (D).

(D) If the resulting offense level determined under subsection (A) or (B) is less than level 24, increase to level 24.

(14)(A) (Apply the greatest) If the defendant was convicted of an offense under:

(i) 18 U.S.C. 1030, and the offense involved (I) a computer system used to maintain or operate a critical infrastructure, or used by or for a government entity in furtherance of the administration of justice, national defense, or national security; or (II) an intent to obtain personal information, increase by 2 levels.

(ii) 18 U.S.C. 1030(a)(5)(A)(i), increase by 4 levels.

(iii) 18 U.S.C. 1030, and the offense caused a substantial disruption of a critical infrastructure, increase by 6 levels.

(B) If subdivision (A)(iii) applies, and the offense level is less than level 24, increase to level 24.

(15) If the offense involved—

(A) A violation of securities law and, at the time of the offense, the defendant was (i) an officer or a director of a publicly traded company; (ii) a registered broker or dealer, or a person associated with a broker or dealer; or (iii) an investment adviser, or a person associated with an investment adviser; or

(B) A violation of commodities law and, at the time of the offense, the defendant was (i) an officer or a director of a futures commission merchant or an introducing broker; (ii) a commodities trading advisor; or (iii) a commodity pool operator,

increase by 4 levels.

(c) Cross References

(1) If (A) a firearm, destructive device, explosive material, or controlled substance was taken, or the taking of any such item was an object of the offense; or (B) the stolen property received, possessed, transported, transferred, transmitted, or possessed was a firearm, destructive device, explosive material, or controlled substance, apply § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy), § 2D2.1 (Unlawful Possession; Attempt or Conspiracy), § 2K1.3 (Unlawful Receipt, Possession, or Transportation of Explosive Materials; Prohibited Transactions Involving Explosive Materials), or § 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition), as appropriate.

(2) If the offense involved arson, or property damage by use of explosives, apply § 2K1.4 (Arson; Property Damage by Use of Explosives), if the resulting offense level is greater than that determined above.

(3) If (A) neither subdivision (1) nor (2) of this subsection applies; (B) the defendant was convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally (e.g., 18 U.S.C. 1001, 1341, 1342, or 1343); and (C) the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline.

(4) If the offense involved a cultural heritage resource, apply § 2B1.5 (Theft of, Damage to, or Destruction of, Cultural Heritage Resources; Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources), if the resulting offense level is greater than that determined above.

[(d) Deleted]

(Effective November 1, 1987, and amended effective June 15, 1988; November 1, 1989; November 1, 1990; November 1, 1991; November 1, 1993; November 1, 1995; November 1, 1997; November 1, 1998; November 1, 2000; November 1, 2001; November 1, 2002; January 25, 2003; November 1, 2003; November 1, 2004.)

*example, a defendant whose business previously was enjoined from selling a dangerous product, but who nonetheless engaged in fraudulent conduct to sell the product, is subject to this enhancement. This enhancement does not apply if the same conduct resulted in an enhancement pursuant to a provision found elsewhere in the guidelines (e.g., a violation of a condition of release addressed in § 2J1.7 (Commission of Offense While on Release) or a violation of probation addressed in § 4A1.1 (Criminal History Category)).*

**(D) College Scholarship Fraud.**—*For purposes of subsection (b)(8)(D):*

*"Financial assistance" means any scholarship, grant, loan, tuition, discount, award, or other financial assistance for the purpose of financing an education.*

*"Institution of higher education" has the meaning given that term in section 101 of the Higher Education Act of 1954 (20 U.S.C. 1001).*

**(E) Non–Applicability of Enhancements.**—

**(i) Subsection (b)(8)(A).**—*If the conduct that forms the basis for an enhancement under subsection (b)(8)(A) is the only conduct that forms the basis for an adjustment under § 3B1.3 (Abuse of Position of Trust or Use of Special Skill), do not apply that adjustment under § 3B1.3.*

**(ii) Subsection (b)(8)(B) and (C).**—*If the conduct that forms the basis for an enhancement under subsection (b)(8)(B) or (C) is the only conduct that forms the basis for an adjustment under § 3C1.1 (Obstructing or Impeding the Administration of Justice), do not apply that adjustment under § 3C1.1.*

**8. Sophisticated Means Enhancement under Subsection (b)(9).—**

**(A) Definition of United States.**—*For purposes of subsection (b)(9)(B), 'United States' means each of the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Northern Mariana Islands, and American Samoa.*

**(B) Sophisticated Means Enhancement.**—*For purposes of subsection (b)(9)(C), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.*

**(C) Non–Applicability of Enhancement.**—*If the conduct that forms the basis for an enhancement under subsection (b)(9) is the only conduct that forms the basis for an adjustment under § 3C1.1, do not apply that adjustment under § 3C1.1.*

**9. Application of Subsection (b)(10).—**

**(A) Definitions.**—*For purposes of subsection (b)(10):*

*"Authentication feature" has the meaning given that term in 18, U.S.C. § 1028(d)(1).*

*"Counterfeit access device" (i) has the meaning given that term in 18 U.S.C. 1029(e)(2); and (ii) includes a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunications service. "Telecommunications service" has the meaning given that term in 18 U.S.C. 1029(e)(9).*

*"Device-making equipment" has the meaning given that term in 18 U.S.C. 1029(e)(6); and (ii) includes (I) any hardware or software that has been configured as described in 18 U.S.C. 1029(a)(9); and (II) a scanning receiver referred to in 18 U.S.C. 1029(a)(8). "Scanning receiver" has the meaning given that term in 18 U.S.C. 1029(e)(8).*

*"Means of identification" has the meaning given that term in 18 U.S.C. 1028(d)(7), except that such means of identification shall be of an actual*

**EXHIBIT 1B**            **EXHIBIT 1B**            **EXHIBIT 1B**

### BREAKDOWN OF U.S.S.G. AS APPLIED/APPLICABLE TO PETITIONER

18 USC §2B1.1   **Larceny, Embezzlement, and Other Forms of Theft:**
                **Offenses Involving Stolen Property; Property**
                **Damage or Destruction; Fraud and Deceit; Forgery;**
                **Offenses Involving Altered or Counterfeit Instruments**
                **Other than Counterfeit Bearer Obligations of the**
                **United States**

   **(a)**  Base Offense Level

        **(2)**  6, otherwise

   **(b)**  Specific Offense Characteristics

        **(G)**  More than $200,000......................add 12

        **(9)**  If (A) the defendant relocated, or participated
               in relocating, a fraudulent scheme to another
               jurisdiction to evade law enforcement or regulatory
               officials;  (B) a substantial part of a fraudulent
               scheme was committed from outside the United States;
               or **(C) the offense otherwise involved sophisticated**
               **means, increase by 2 levels.**  If the resulting
               offense level is less than level 12, increase to
               level 12.

(emphasis added)

**EXHIBIT 1B**            **EXHIBIT 1B**            **EXHIBIT 1B**

EXHIBIT 1C                    EXHIBIT 1C                    EXHIBIT 1C

### U.S.S.G. CALCULATION
### BOTH INCORRECT & CORRECT
### AS APPLIED/APPLICABLE TO PETITIONER


U.S.S.G. §2B1.1

| CORRECT | | INCORRECT |
|---|---|---|
| 6 | BASE OFFENSE LEVEL | 6 |
| + 12 | AMOUNT OF LOSS | + 12 |
| + 2 | ADJUSTMENTS<br>(9) SOPHISTICATED MEANS | + 2 |
| 20 | SUB-TOTAL | 20 |
| - 2 | DOWNWARD DEPARTURES<br>U.S.S.G. §3E1.1 ACCEPTANCE OF RESPONSIBILITY | - 0 |
| 18 | TOTAL | 20 |
| 51 to 63 | SENTENCING RANGE WITH C.H.C. OF 5<br>IN MONTHS | 63 to 78 |


EXHIBIT 1C                    EXHIBIT 1C                    EXHIBIT 1C

EXHIBIT 1D

# SENTENCING TABLE
(IN MONTHS OF IMPRISONMENT)
CRIMINAL HISTORY CATEGORY (CRIMINAL HISTORY POINTS)

EXHIBIT 1D

| OFFENSE LEVEL | I (0 or 1) | II (2 or 3) | III (4,5,6) | IV (7,8,9) | V (10,11,12) | VI (13 or More) |
|---|---|---|---|---|---|---|
| 1 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 |
| 2 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | |
| 3 | 0-6 | 0-6 | 0-6 | 0-6 | | |
| 4 | 0-6 | 0-6 | 0-6 | | | |
| 5 | 0-6 | 0-6 | | | | 9-15 |
| 6 | 0-6 | | | | 9-15 | 12-18 |
| 7 | 0-6 | | | 8-14 | 12-18 | 15-21 |
| 8 (Zone A) | 0-6 | | | 10-16 | 15-21 | 18-24 |
| 9 | | | 8-14 | 12-18 | 18-24 | 21-27 |
| 10 | | 8-14 | 10-16 | 15-21 | 21-27 | 24-30 |
| 11 | 8-14 | 10-16 | 12-18 | 18-24 | 24-30 | 27-33 |
| 12 (Zone C) | 10-16 | 12-18 | 15-21 | 21-27 | 27-33 | 30-37 |
| 13 | 12-18 | 15-21 | 18-24 | 24-30 | 30-37 | 33-41 |
| 14 | 15-21 | 18-24 | 21-27 | 27-33 | 33-41 | 37-46 |
| 15 | 18-24 | 21-27 | 24-30 | 30-37 | 37-46 | 41-51 |
| 16 | 21-27 | 24-30 | 27-33 | 33-41 | 41-51 | 46-57 |
| 17 | 24-30 | 27-33 | 30-37 | 37-46 | 46-57 | 51-63 |
| 18 | 27-33 | 30-37 | 33-41 | 41-51 | 51-63 | 57-71 |
| 19 | 30-37 | 33-41 | 37-46 | 46-57 | 57-71 | 63-78 |
| 20 | 33-41 | 37-46 | 41-51 | 51-63 | 63-78 | 70-87 |
| 21 | 37-46 | 41-51 | 46-57 | 57-71 | 70-87 | 77-96 |
| 22 | 41-51 | 46-57 | 51-63 | 63-78 | 77-96 | 84-105 |
| 23 | 46-57 | 51-63 | 57-71 | 70-87 | 84-105 | 92-115 |
| 24 | 51-63 | 57-71 | 63-78 | 77-96 | 92-115 | 100-125 |
| 25 | 57-71 | 63-78 | 70-87 | 84-105 | 100-125 | 110-137 |
| 26 | 63-78 | 70-87 | 78-97 | 92-115 | 110-137 | 120-150 |
| 27 | 70-87 | 78-97 | 87-108 | 100-125 | 120-150 | 130-162 |
| 28 | 78-97 | 87-108 | 97-121 | 110-137 | 130-162 | 140-175 |
| 29 | 87-108 | 97-121 | 108-135 | 121-151 | 140-175 | 151-188 |
| 30 | 97-121 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 |
| 31 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 |
| 32 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 |
| 33 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 |
| 34 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 |
| 35 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 |
| 36 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 |
| 37 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 | 360-LIFE |
| 38 | 235-293 | 262-327 | 292-365 | 324-405 | 360-LIFE | 360-LIFE |
| 39 | 262-327 | 292-365 | 324-405 | 360-LIFE | 360-LIFE | 360-LIFE |
| 40 | 292-365 | 324-405 | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE |
| 41 | 324-405 | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE |
| 42 | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE |
| 43 (Zone D) | LIFE | LIFE | LIFE | LIFE | LIFE | L IFE |

## CERTIFICATE OF SERVICE

I, Anthony Snow, do hereby state under penalty of perjury,
that I mailed a copy of the following:

MOTION FOR CORRECTION OF SENTENCE
PURSUANT TO 18 USC §3742, RULE 52(b) F.R.Crim.P.
AND/OR ANY OTHER PERTINENT/APPLICABLE STATUTES/RULES

to the below listed person(s):

Office Of The U.S. Attorney
District of Massachusetts-Boston Division
Federal Courthouse Bldg.
90 Devonshire Street
Boston, Massachusetts  02109

by placing it in a sealed envelope (first class postage pre paid),
and depositing it in the outgoing legal mail receptacle located
at Federal Medical Center-Devens in Ayer, Massachusetts for forwarding
by prison officials in accordance with applicable policies and laws
regulating such.

Dated, this the **8TH** day of **July**, 2005.

Anthony Snow (pro se)
Reg. No. 24639-038
F.M.C. Devens
P.O. Box 879
Ayer, MA   01432

-17-